UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>THOMAS SHER et. al.<br><br><br>Defendant(s) | Plaintiffs<br><br><br>Criminal No: 19-cr-0191-RBK |

**OPPOSITION OF DEFENDANT, THOMAS SHER, TO THE GOVERNMENT'S MOTION IN LIMINE**

I.   INTRODUCTION

It is a sad day in American jurisprudence when the Government seeks to dictate by a pre-emptive pre-trial motion the defense of a citizen charged with alleged violations of federal law. It is sadder when the Government recites incorrect facts to support that motion. Defendant, Thomas Sher, opposes the government's motion in limine as set forth below. Defendant does not oppose reciprocal discovery.

I.   COUNTER STATEMENT OF FACTS

Defendant does not intend to outline his defense in this opposition nor is the defendant required to do so. Yet several premises of the Government's position are incorrect as it relates to Thomas Sher. The Government alleges a vast health insurance fraud conspiracy and has cast a wide net alleging criminality as to everyone who "profited" regardless of whether they had requisite criminal intent as emphatically set forth by the Supreme Court of the United States ("SCOTUS") in its June 27, 2022, decision in <u>Ruan v U.S.</u> No. 20-1410, 597 U.S. \_\_\_\_\_ (decided June 27, 2022). Defendant here contends the government has cast too wide a net trapping defendant, who is innocent of any crimes, within its allegations of conspiracy. By failing to

1

differentiate between those who intentionally and purposely acted to violate federal law, the Government has ensnared in its net Defendant Thomas Sher as innocent by-catch. In *Ruan,* however, SCOTUS cautioned that issuance of prescriptions by doctors are authorized by licensure of the doctor and that it is the burden of the Government to demonstrate that the doctors acted in an unauthorized manner and that Defendant Thomas Sher knew it.  As SCOTUS stated in Ruan:

> "First, as a general matter, our criminal law seeks to punish the "'vicious will.'" <u>Morissette v. United States</u>, 342 U. S. 246, 251 (1952); see also id., at 250, n. 4 (quoting F. Sayre, Cases on Criminal Law, p. xxxvi (R. Pound ed. 1927)). With few exceptions, "'wrongdoing must be conscious to be criminal.'" <u>Elonis v. United States</u>, 575 U. S. 723, 734 (2015) (quoting Morissette, 342 U. S., at 252). Indeed, we have said that consciousness of wrongdoing is a principle "as universal and persistent in mature systems of [criminal] law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." Id., at 250." <u>Ruan </u>at 5.

The fundamental elements of the Hickman-Gafni conspiracy were that Hickman allegedly bribed Dr. Gafni to sign prescriptions without examining certain patients, particularly those who were not his patients.  The clearest example of the Hickman-Gafni criminal conduct was that some patients Gafni never saw received prescriptions.  The lack of medical necessity for such prescriptions is thus patent on its face since the patient was never examined or evaluated for the prescription.  Such a prescription could therefore never be "authorized" within the meaning of the licensed authority of the prescribing physician.

This scenario never occurred regarding defendant Thomas Sher or any of his referrals. Most of the referrals Thomas Sher referrals, which were not numerous, were union members who went to their own doctors and not Dr. Gafni.  These patients received prescriptions under their

union plan to which they were entitled. Yet the Government lumps them together with all other prescription recipients whom Dr, Gafni never saw and who were not his patients…ever.

Another important element of the Hickman-Gafni conspiracy was that Gafni either forged prescriptions or authorized others to forge his name in exchange for payments of bribes. This did not apply to Thomas Sher's referrals who went to their own doctors. How could it? And as to the minority of the Thomas Sher referrals who were already Dr. Gafni patients, the Government has no proof of any knowledge, "vicious will" as SCOTUS calls it citing a century of legal authority, on the part of Thomas Sher.

Ans to the extent the government will attempt to argue that the patient did not receive a contemporaneous examination with the issuance of the prescription by Gafni, such conduct is not criminal but instead is a regulatory violation by the physician, not the patient, of the regulations governing issuances of prescriptions.

More significant, the third-party benefits administrator, Express Scripts, a multi-billion-dollar company, conducted due diligent reviews of each prescription, or at least was contracted to do so, and thus the medical necessity of the prescriptions of those who were patients of the issuing doctor, all prescriptions were presumptively valid because they were issued by physicians for the patients involved and subsequently vetted by Express Scripts.

### A.    EXPRESS SCRIPTS IS NOT A VICTIM

Defendant, vehemently contests the government's characterization of Express Scripts, the third-party administrator, as a "victim."   Defendant Sher, just like the Union, relied on Express Scripts to properly fulfill its contractual obligation in reviewing and approving prescriptions. When Express Scripts authorized the prescriptions, Sher had a good faith basis to believe that the prescriptions were valid and thus lawful.  It is Express Scripts that should be held to account to the Union Plan to the extent it now claims it, in hindsight, should not have approved prescriptions for those referrals Sher made.  This Court should therefore require the Government to present Express Scripts to make its public *Mea Culpa* and allow it to be subject to the crucible of cross-examination.

As such, since the government's effort to cast Express Scripts as a victim is vehemently disputed, this defense should not be pre-emptively excluded as such a ruling would be a fundamental denial of due process.

For these reasons, the government's motion on this point must be denied.

### B.    STATEMENTS OF CO-CONSPIRATORS SHOULD NOT BE ADMITTED AS NON-HEARSAY AT TRIAL

The fundamental unfairness of the government's effort here is to attempt to impute criminal mens rea to defendant by persons who never dealt with him.  The government seeks, therefore, to offer into evidence hearsay statements of the alleged conspiracy with no evidence that Thomas Sher was present for or participated in the alleged statement being offered.  This is particularly important in the present case since there are many categories of alleged co-conspirators.  There are clearly those who knew that Dr. Gafni was being bribed.  There is no evidence that Thomas Sher knew of this conduct.  There are co-conspirators who knew that Gafni was allegedly signing

prescriptions for persons that were not his patients. There is no evidence that Thomas Sher knew this fact. There is likewise no evidence that Thomas Sher spoke to alleged co-conspirator including his brothers, Michael Sher and John Sher, of forged prescriptions or bribes. In a nutshell, the Government has no evidence that any of the alleged conspiratorial statements implicate Thomas Sher.

Given that the Government makes its motion on this point without identifying the hearsay statements it seeks to admit, this Court should not be required to decide this point in a vacuum. The Government should be required to make an offer of proof as to what statements the Government intends to offer and to demonstrate the relevance of such statement to proving criminal intent. Until such offer was made, this Court should deny the present motion on this point.

C.   **DEFENDANT INTENDS TO OFFER STANDARD CHARACTER EVIDENCE AS PERMITTED UNDER THE FEDERAL RULES OF EVIDENCE**

First, the government seeks to gut the defendant's ability to defend himself by attempting to shield Express Scripts. Then the Government seeks to smear the defendant with unidentified hearsay statements of unidentified co-defendants who have nothing to say about Thomas Sher by characterizing the statements as non-hearsay. And now, the Government seeks to bar introduction into evidence alleged instances of "good conduct" or "good works" as a Firefighter, Lifeguard, and other community service acknowledgements.

As this Court well knows, traditional character evidence is not the opinion of the witness of the defendant but instead is testimony of the witness' knowledge of defendant's reputation in the community as a truthful, honest, and law-abiding person. The witness' knowledge is derived from the very acts of good conduct, good works, and community service accolades that the defendant has received. Character evidenced a long sufficient for a jury to acquit a defendant.

5

(Model Charge 4.39). Defendant's intention is to offer character evidence as a permitted in the limited form prescribed by Federal Rule of Evidence 404(a)(1) and FRE 405(a).  Thus, to the extent the government seeks to cross-examine such evidence to test the basis of each opinion, the government does so at its own peril as the witness can then testify to the factual basis of the opinion being derived from the witness's knowledge of defendant's good works, deed, and accolades in the community.

Since, the Government has offered no basis in law to support its position that such evidence as it relates to Thomas Sher should be excluded.  Thus, the Government's motion on this point should be denied.

### D.     WITNESSES AND SPECTATORS SHOULD DRESS AS THEY CHOSE

The government's effort to stage the trial by dictating the apparel of potential witnesses and spectators of the defense is beyond the pale.  Were defendant to file a counter motion that all FBI agents should appear in court in t-shirts and shorts and not wear suits and ties, the motion would be laughed out of court.  Witnesses should be permitted to testify in whatever apparel they deem appropriate.  To the extent a witness holds an official position that is demonstrated by a uniform, that witness should be permitted for the defense to wear that uniform just as if the government presented the witness in that capacity.  To the extent that the government fears that the jurors will be "intimated or influenced" by such uniforms, this concern can be addressed during jury selection and the jury subsequently instructed to avoid outside influences and only render a verdict based solely from the evidence from the witness stand.  For these reasons, the government's motion on this point must be denied.

### E.  THE GOVERNMENT'S MOTION TO USE LEADING QUESTIONS FOR ADVERSE OR HOSTILE WITNESSES IS PREMATURE

The issue of whether a witness has in fact become hostile to the government is a fact-sensitive inquiry that cannot be decided until time of trial.  Certainly, if the government has a statement from the witness and during witness prep the witness has demonstrated an abandonment of the prior statement, such evidence should be disclosed as *Brady* material immediately.  Where a witness offers testimony favorable to defendants even though called by the government, such a witness is not automatically hostile and thus the government has no right to attack its own witness on cross-examination.  Otherwise, Federal Rules of Evidence 611 addresses the adverse/hostile witness scenario which this Court will no doubt apply

For these reasons, the present motion on this point must be denied without prejudice and dealt with at the time of trial should the scenario arise.

### F.  PRIOR GRAND JURY TESTIMONY SHOULD NOT BE ADMITTED AS SUBSTANTIVE EVIDENCE SINCE THE DEFENDANT WAS NOT PRESENT AND HAD NO OPPORTUNITY TO CROSS-EXAMINE THE WITNESS

Again, it appears unclear as to whether the government makes its motion on the present point in the abstract or whether trial preparation has revealed inconsistencies of witnesses between their grand jury testimony and their trial preparation testimony.  Clearly, if the latter, *Brady* compels immediate disclosure is required.

To the extent the government is simply making a prophylactic motion anticipating potential inconsistencies, again, the motion is premature, fact-sensitive and should be dealt with at the time of trial. For these reasons, the government's motion on this point must be denied.

### G. REFERENCES TO PUNISHMENT ARE APPROPRIATE IN CROSS-EXAMINING WITNESSES WHO SEEK LENIENCY AT THEIR OWN SENTENCINGS

Preclusion of references to possible punishment or collateral consequences of conviction is appropriate as to the defendant but not as to the cross-examination of witnesses of their motive to seek leniency of possible punishment and collateral consequences they face in exchange for their testimony. As such, defendant does not oppose the Government's request on this point relating to the defendant only, and not as to any 5k1.1 witnesses. Since the government's request is limited to defendant only and not to cross-examination of witnesses, defendant submits that the government's request, subject to the defense clarification as to cross-examination of 5k1.1 witnesses, should be granted.

### H. DEFENDANT CONSENTS TO ENTRY OF AN ORDER FOR RECIPROCAL DISCOVERY

Defendant does not dispute this point and will make reciprocal discovery as the Court directs a time of argument on August 3, 2020.

Dated: July 25, 2022                                        Respectfully submitted,

                                                            */s/ Joseph P. Grimes*

                                                            _____

                                                            Joseph P. Grimes, Esquire
                                                            Attorney for Defendant,
                                                            Thomas Sher

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the attached pleading has been served by ECF efiling and by email on the Government to the attention of AUSA Chistina HUD and Desiree Grace at the U.S. Attorney's Office, Camden, NJ.  on July 26, 2022.

I hereby certify that the foregoing statement made by me is true.  If any of the foregoing statements made by me is willfully false, I understand I am subject to punishment according to Law.

Dated:  July 25, 2022                                              Respectfully submitted,

/*s/ Joseph P. Grimes*

_____

Joseph P. Grimes, Esquire
Attorney for Defendant,
Thomas Sher

Joseph P. Grimes, Esq., LLC
NJ # 022781977
810 Asbury Avenue
Suite 212
Ocean city, NJ 08226
856-816-7900
JGrimesEsq@Gmail.com

9